7/11/01

**THIS DISPOSITION IS CITABLE AS PRECEDENT OF THE T.T.A.B.**

Paper No. 19
EJS

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Major League Umpires
_____

Serial No. 75/154,506
_____

John S. Child, Jr. of Dann Dorfman Herrell and Skillman PC for Major League Umpires.

Mary Rossman, Trademark Examining Attorney, Law Office 109 (Ronald Sussman, Managing Attorney)
_____

Before Cissel, Seeherman and Hairston, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Major League Umpires, a limited liability corporation, has appealed from the final refusal of the Trademark Examining Attorney to register MAJOR LEAGUE UMPIRE as a trademark for "clothing, namely, shirts, tee-shirts, jackets, caps, trousers, socks, wind resistant jackets, wristbands, uniforms and shoes," in Class 25, and "face masks, chest protectors and shin guards for athletic use,"

in Class 28.[1]  Registration has been refused pursuant to

Section 2(e)(1) of the Trademark Act, 15 U.S.C. 1052(e)(1),

on the ground that applicant's mark is merely descriptive

of its identified goods.

The appeal has been fully briefed.  Although applicant

initially requested an oral hearing, it subsequently

withdrew that request.

Preliminarily, we must address a procedural matter.

With its reply brief applicant has offered to amend the

identification of goods to limit them to "retail sale to

the general public" to address the Examining Attorney's

contention that the mark is merely descriptive because it

describes the class of consumers of the products.  If

applicant had wished to amend the identification in this

manner, the proper procedure was to file a request for

remand.  Nor will we treat this offer made in the reply

brief as a request for remand.  Applicant has provided no

reason as to why it waited until its reply brief to proffer

an amendment to its identification, although the Examining

Attorney's position was known to it since the initial

Office action.  Moreover, it is noted that after the filing

---

[1]  Application Serial No. 75/154,506, filed August 22, 1996, based on an assertion of a bona fide intention to use the mark in commerce.

2

of its appeal applicant requested and was granted a remand of the application in order to submit new evidence; even at that point applicant could have offered an amendment to the identification as part of that request.  In any event, because major league umpires are part of the general public, and because of the arguments made by the Examining Attorney, discussed below, it is clear that the amendment suggested by applicant would not overcome the Examining Attorney's objections.

It is the Examining Attorney's position that applicant's mark is merely descriptive because it immediately informs prospective purchasers 1) that the goods have been designed and/or invented by a major league umpire; 2) that they are to be provided by major league umpires; 3) that they are for use in umpiring major league baseball games and other athletic competitions; and 4) that their quality is equivalent to those used by major league umpires.

It is well-established that a term which describes the provider of goods or services is also merely descriptive of those goods and services.  **In re E. I. Kane Inc.**, 221 USPQ 1203 (TTAB 1984), and cases cited therein.  Here, the evidence shows that "the officers and partners of Applicant are employed as major league baseball umpires."  Response

mailed June 19, 1997, p. 2. Moreover, applicant, in its advertisements for its goods, includes the information that it "is owned and operated by three National League umpires: Paul Runge (#17), Joe West (#22), and Jerry Layne (#24)." "Referee" magazine, March 1998, submitted with applicant's request for remand mailed May 4, 1998. Applicant's website also prominently advertises that it is owned and operated by three National League umpires,[2] and the biographies of these men, also prominently featured on the website, list their activities as major league umpires.

Accordingly, there can be no question that MAJOR LEAGUE UMPIRE describes the provider of the identified goods. Applicant, however, asserts that "marks designating providers are merely descriptive of the goods or services only if the mark itself is descriptive of the goods or services." Reply brief, p. 6. To the extent that applicant is contending that a mark which is descriptive of the provider of the goods or services must also separately be merely descriptive of a different characteristic of the goods or services, such a requirement would appear to be redundant. Generally, if a mark is merely descriptive of a characteristic of the goods or services, there would be no

---

[2]  We take judicial notice that the National League is part of Major League Baseball.

need to reach the question of whether the mark also describes the provider of the service. We acknowledge that the cases cited in <u>Kane</u> involve marks which include words which more directly reference the goods or services, e.g., THE <u>PHONE</u> COMPANY for telephones (emphasis added) (**In re The Phone Company, Inc.**, 218 USPQ 1027 (TTAB 1983)); STRIPPERS for furniture stripping services (**In re Quatomatic, Inc.**, 185 USPQ 59 (TTAB 1974)). However, the general rule, as enunciated in <u>Kane</u>, does not require the interpretation suggested by applicant. Certainly, "doctor's diet" for a diet plan would be understood by consumers as describing a diet designed or provided by a doctor, even though "doctor" does not describe the qualities or mechanics (e.g., low fat, low carbohydrate) of the diet plan. Further, the Board found, in **In re Old Boone Distillery Co.** 172 USPQ 697 (TTAB 1972), that DISTILLER'S LIGHT was merely descriptive of scotch whisky. Obviously DISTILLER'S describes the provider of the whisky, not the whisky itself.

Having found that MAJOR LEAGUE UMPIRE is merely descriptive on the basis that it describes the provider of the goods, we will discuss in a more abbreviated fashion the additional reasons given by the Examining Attorney as to why she has refused registration. We would point out,

though, that the mark MAJOR LEAGUE UMPIRE also immediately conveys to purchasers information about a designer of at least some of the goods.  Applicant's advertisements tout the fact that a protective vest it sells was invented by "Major League Umpire Joe West."  The "Referee" magazine advertisements submitted by applicant also show that third parties advertise their products as being designed by major league umpires.  See, for example, the Gerry Davis Sports advertisement in "Referee" November 1997, which features "The Gerry Davis Plate Shoe Designed by National League umpire Gerry Davis."  This same advertisement states that "Gerry Davis National Umpire Clinics will bring Major League Umpires to your Backyard!  Gerry will bring a crew of AL and NL umpires to your site to serve as lead instructors."  The purchasers of applicant's protective gear as well as of the clothing that would be worn during a game are likely to read magazines such as "Referee" (as witnessed by applicant's advertising its goods in this publication) and would be aware that major league umpires design umpire clothing and gear.  Therefore, the mark MAJOR LEAGUE UMPIRE would immediately convey to such purchasers a characteristic of the gear/clothing, i.e., that it is designed by a major league umpire.

As for the remaining points made by the Examining Attorney, there is no question that major league umpires are among the class of purchasers of applicant's goods. Applicant stated that "the officers and partners expect to offer the clothing and equipment referenced in the identification of goods by mail order to umpires at all levels of professional and amateur baseball…." Response mailed June 19, 1997. Although one of applicant's principals later submitted a declaration stating that the goods "are not intended to be sold or directed to the umpires employed by either the National or American Leagues of Professional Baseball Clubs (i.e., the Major League Umpires)," it is clear that major league umpires comprise part of applicant's buying public.

The primary argument made by applicant is that, even though major league umpires can be purchasers of its goods, in this case the number of such umpires (68) is so small that they do not comprise a significant portion of the market for the goods. Therefore, although applicant recognizes that a mark may be found to be merely descriptive if it describes the users of the goods, in this case applicant contends that the fact that major league umpires are purchasers of the goods is not a significant characteristic of the goods.

We would point out that although applicant characterizes its customers as the general public, in fact, its goods are directed at only those members of the general public who are umpires, a much smaller group. Looking at this group, we cannot determine, on this record, whether a significant number of the purchasers of applicant's identified goods would be major league umpires, as opposed to minor league or Little League or other umpires. Accordingly, we cannot determine that the mark is descriptive of a significant number of the purchasers of the goods. Therefore, because it is not clear whether the mark describes a significant characteristic of the goods in terms of the purchasers, we cannot say that the mark is merely descriptive on this basis.

On the other hand, MAJOR LEAGUE UMPIRE does describe the goods as being of a type used by major league umpires. The evidence shows that applicant does intend to sell the same goods used by major league umpires. As applicant acknowledged in its response mailed June 19, 1997, it is "still negotiating with suppliers of clothing and equipment of the types currently used by major league baseball umpires." Consumers will therefore understand the mark MAJOR LEAGUE UMPIRE, if used on the identified goods, to describe goods which are used by major league umpires.

8

Finally, we reject the Examining Attorney's argument that, because "major league" is a laudatory term, MAJOR LEAGUE UMPIRE merely describes the products as being of high quality. The words "major league," as used in the mark, clearly describe the "umpires," not the goods.

There is one final procedural point. At page 5 of its appeal brief applicant states that "the factual evidence provided by Applicant and the Examining Attorney demonstrate[s] that under the *Hunter Publishing* test, Applicant's mark is also distinctive and, therefore, should be registered even if found to be descriptive."[3] To the extent that applicant, by this statement, seeks to claim that its mark has acquired distinctiveness and is therefore registrable under the provisions of Section 2(f) of the Act, that claim is untimely. A Section 2(f) claim cannot be raised for the first time in an appeal brief; it must be raised during the prosecution of the application, at a point when the Examining Attorney has the opportunity to consider it and respond to it by argument and/or evidence. See Trademark Rule 2.142(d). Accordingly, the Board has given no consideration to such a claim.

Decision: The refusal of registration is affirmed.

---

[3] **Hunter Publishing Co. v. Caulfield Publishing Ltd.**, 1 USPQ2d 1996 (TTAB 1986).